IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:13CR282 |
| | ) | |
| Plaintiff, | ) | JUDGE SOLOMON OLIVER |
| | ) | |
| v. | ) | |
| | ) | |
| ERIC GOOCH, | ) | **GOVERNMENT'S TRIAL BRIEF** |
| | ) | |
| Defendant. | ) | |

The United States of America, by and through counsel, Steven M. Dettelbach, United States Attorney, Michelle M. Baeppler and M. Kendra Klump, Assistant United States Attorneys, and respectfully submit the following Trial Brief.

**I.   FRYE INQUIRY**

Ordinarily, the United States would request that the Court inquire, before trial, whether defense counsel has communicated to Defendant whether Defendant has rejected, a pretrial plea offer made by the United States in accordance with Missouri v. Frye, ___ U.S. ____, 132 S.Ct. 1399 (2012). In Frye, the Court considered an ineffective assistance of counsel claim by a defendant whose attorney did not communicate a plea offer to him. Frye was charged with a felony carrying a maximum term of four years imprisonment. Id. at 1404. The prosecutor in that case made an alternative plea offer of a felony with 10 days of "shock time" in prison or a misdemeanor with 90 days in prison. Id. Frye's attorney never communicated the plea offer to him, and it expired. Id. Later, Frye pleaded guilty and was sentenced to three years in prison, far

1

longer than the plea offer. Id. at 1404-05. The Court held that, "as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." Id. at 1408.

In the instant matter, a formal plea offer was never extended by the United States, insofar as Defendant has never demonstrated any desire to enter a guilty plea to any offense charged in the Indictment, or any variable thereof. The United States respectfully requests that counsel for Defendant be permitted to address, on the record, whether any plea discussions were ever had between counsel and Defendant.

Moreover, the United States respectfully requests that this Honorable Court address the penalties Defendant will face if convicted of the offenses set forth in the Indictment. A summary of the offenses and the potential penalties for the same are set forth below.

## II. CHARGES AND EVIDENCE TO BE PRESENTED

On June 5, 2013, a duly impaneled federal grand jury returned a seven count indictment charging Eric Gooch with the following offenses:[1]

Count 1 – Conspiracy to Commit Hobbs Act Robbery – 20 years imprisonment

Count 2 – Hobbs Act Robbery – maximum 20 years imprisonment

Count 3 – Using a Firearm during the Commission of a Crime of Violence (Brandishing)
 Mandatory minimum 7 years imprisonment, maximum life imprisonment

Count 4 – Armed Bank Robbery – maximum 25 years imprisonment

Count 5 - Using a Firearm during the Commission of a Crime of Violence (Brandishing)
 Mandatory minimum 7 years imprisonment, maximum life imprisonment

---

[1] Co-conspirators Larnell Tripp and Ashley White were charged as well in this indictment and have plead to charges and been sentenced.

<u>Count 6</u> – Armed Bank Robbery – maximum 25 years imprisonment

<u>Count 7</u> – Using a Firearm during the Commission of a Crime of Violence (Brandishing)

Mandatory minimum 7 years imprisonment, maximum life imprisonment

As to the firearm charges in Counts 3, 5 and 7, should the defendant be convicted of more than one count under this statute the penalties would be as follows: first count of 18 U.S.C. § 924(c) conviction = 7 years mandatory minimum, maximum of life, consecutive to any other term of imprisonment; second count of 18 U.S.C. § 924(c) conviction = mandatory minimum of 25 years, maximum of life, consecutive to any other term of imprisonment; third count of 18 U.S.C. § 924(c) conviction = mandatory minimum of 25 years, maximum of life, consecutive to any other term of imprisonment. <u>See</u> 18 U.S.C. § 924(c)(1)(A)(ii), 18 U.S.C. § 924(c)(1)(C)(i). This stated, if defendant is convicted on all of the § 924(c) counts set forth in the indictment, he is facing a mandatory minimum penalty of 57 years on the firearms charges alone. This potential 57 year sentence is separate and apart from any sentences imposed for the Hobbs Act or Bank Robbery counts.

The charges arise from three separate violent crimes. The first robbery from which the charges in Counts 1, 2 and 3 arose occurred on January 21, 2013. Evidence will be adduced at trial that on this day, Rose's Department Store, located at 3250 West 65th Street in Cleveland, Ohio, was robbed at gunpoint by Larnell Tripp, Eric Gooch and another known, but not indicted co-conspirator. Taken during the robbery was approximately $16,426.70. Evidence will show that prior to the robbery, Ashley White, Eric Gooch, Larnell Tripp and another individual planned this robbery. On the day of the robbery, Eric Gooch, along with Larnell Tripp and another, drove to Rose's Department Store, parked outside and waited for Tripp to go into the store and empty the safe. After committing the robbery, Tripp entered the get-away car with Eric

Gooch and their other co-conspirator. For his participation in the robbery, Gooch received items purchased with money stolen from Rose's. Eric Gooch confessed to his role in the robbery.

The armed robbery of PNC Bank, located at 16614 Harvard Avenue, Cleveland, Ohio, occurred on February 22, 2013, and gives rise to Counts 4 and 5 of the Indictment. Evidence will show that on this day, Eric Gooch, along with Greg Williams, robbed this bank at gunpoint. During the course of the robbery, both Gooch and his accomplice carried and brandished firearms. Evidence will be presented that multiple bank patrons were forced to the ground at gunpoint. Gooch and his accomplice successfully entered the bank's vault on this day. Stolen from the bank by Gooch and his accomplice was approximately $158,831. Left in a box dropped on the bank's floor was approximately $107,780. Eric Gooch confessed to his role in the robbery.

On March 13, 2013, the PNC Bank located at 2771 South Moreland Boulevard, Cleveland, Ohio, was robbed at gunpoint by Greg Williams. Standing outside as a lookout was Eric Gooch. Stolen during this robbery was approximately $126,000. Eric Gooch confessed to his role in the robbery.

### III. WITNESS LIST

The United States has requested, in a separately filed motion, the ability to file its witness list under seal, given the nature of the charges and the fear of the victims.

### IV. EXHIBIT LIST

Rose's

    1.          Surveillance video from Rose's Department Store
    1a.         Edited video from Rose's Department Store
    2a-2b.     Still photographs from Rose's Department Store
    3.          Photographic array signed by Leslie Rosa
    4.          Smith and Wesson .40 caliber firearms
    4a.         Magazine & ammunition

**PNC I**

| | |
|---|---|
| 5. | Bank sketch PNC, 16614 Harvard Avenue, Cleveland, Ohio |
| 6. | Red and black messenger bag |
| 7. | Surveillance video PNC, 02/22/13, 20 minutes before |
| 7a-7e. | Still photographs from PNC, 02/22/13, 20 minutes before. |
| 8. | Surveillance video PNC, 02/22/13 |
| 9a-9s. | Still photographs PNC, 02/22/13 |
| 10a-10k. | Photographs from inside PNC, 16614 Harvard Avenue, Cleveland, Ohio |
| 11a-11b. | Surveillance photographs signed by defendant |
| 12. | Surveillance photo signed by Ashley White identifying defendant |
| 13. | Surveillance photo signed by Tashae Williams identifying defendant |
| 14a-14b. | Surveillance photos signed by Tashae Williams identifying Greg Williams' clothing |
| 15. | Earrings |
| 16a-16b. | Audit sheets |

**PNC II**

| | |
|---|---|
| 17. | Surveillance video from PNC 03/13/13 |
| 18a-18l. | Still photographs, PNC 03/13/13 |
| 19. | Photograph of physical injuries of security guard |
| 20. | Surveillance photo signed by Tashae Williams identifying Greg Williams' clothing |
| 21a-21c. | Audit sheets |

**Miscellaneous**

| | |
|---|---|
| 22a-22k. | Photographs – Search of defendant hotel room |
| 23. | $1,120 located in hotel room |
| 24. | MacBook computer |
| 25. | IPhone |
| 26. | Bag containing Surge protector/audio speaker/tripod |
| 27. | Bag containing Lowepro Bag/ Camera Lens/"Zoom Recorder"/stack of CDR's/ assorted batteries |
| 28. | Nikon camera |
| 29. | Microphone/proheadphones/MBox Mini Device/ Tripod |
| 30. | Cell phone records |
| 30a. | 216-408-6460 (Eric Gooch) |
| 30b. | 216-469-4994 (Greg Williams) |
| 30c. | 216-533-4403 (Shawn Caldwell) |
| 30d. | Cell phone summary chart |
| 31. | Buccal swab from defendant |
| 32. | 1 CD containing audiotaped interview of defendant |
| 33. | Ashley White plea agreement |
| 34. | FDIC Certificate |

    35.        Photograph of Shawn Caldwell
    36.        Photograph of Greg Williams

## V.   ANTICIPATED EVIDENTIARY AND LEGAL ISSUES

### A.   DISRUPTION IN THE COURTROOM

A defendant's presence at a trial is governed by Fed. R. Crim. Proc. 43, which requires his/her presence at the initial appearance, initial arraignment, plea, every trial stage (including jury impanelment and return of the verdict), and sentencing. This right to be physically present is "root[ed] in both the Due Process Clause and the Confrontation Clause of the Sixth Amendment." Gray v. Moore, 520 F.3d 616, 622 (6th Cir. 2008). As a constitutional right, courts are reluctant to find exceptions to the presence requirement.

The Sixth Circuit addressed whether video conferencing could replace physical presence in United States v. Williams, answering with a definitive no. 641 F.3d 758, 764 (6th Cir. 2011) ("The district court erred by conducting the sentencing hearing by video conference with Williams not physically present in the courtroom . . . . Rule 43 requires that the defendant be present, which simply cannot be satisfied by anything less than physical presence in the courtroom."). Although the holding was specifically for Rule 43's effect on sentencing, the dicta strongly suggests that the Sixth Circuit would find similarly for the trial itself. The court determined that neither the text of Rule 43 nor the structure of the rule could allow for video conferencing. Id. The Court followed the Fourth, Fifth, and Tenth Circuits in deciding that "a criminal defendant's rights" could not be outweighed by convenience. Id. See also United States v. Torres-Palma, 290 F.3d 1244, 1248 (10th Cir. 2002); United States v. Lawrence, 248 F.3d 300, 304 (4th Cir. 2001); United States v. Navarro, 169 F.3d 228, 239 (5th Cir. 1999). Thus it seems unlikely that the district court would allow video conferencing as a preemptive measure.

> Still, there are two relevant ways in which a defendant may waive this right. A defendant may voluntarily waive his/her right to be present, but only after the trial has already

begun. Fed. R. Crim. Proc. 43(c). In United States v. Clark, the defendant "expressed his desire to return to jail," which the Court of Appeals viewed as a waiver of this right. 591 F.App'x 367, 374 (6th Cir. 2014).

A defendant may also constructively waive his/her right to be present by acting out during the trial. Fed. R. Crim. Proc 43(c)(1)(C). The Supreme Court condoned this waiver in Illinois v. Allen, holding that "a defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom." 397 U.S. 337, 343 (1970). The Sixth Circuit adopted this framework in Gray v. Moore when it admonished the trial court for not warning the defendant that he might be removed before actually removing him. 520 F.3d at 623. Cf. Clark, 591 F.App'x at 373 (approving the district court's removal of an unruly defendant after a clear warning).

In this case, defendant has in the majority of the proceedings behaved disruptively, including yelling profanities randomly, telling the Magistrate Judge repeatedly, "I'm not talking to you," twirling his hair, and other such distracting measures. Should Defendant choose to act in such a manner during the trial of this case, the government requests that he be admonished that such behavior will not be tolerated and that should he disregard the Court's instruction and persist in this type of behavior that he will be removed from the court room and tried via closed circuit television. Such instruction should be given outside the presence of the jury.

### B. PRO SE LITIGANT

In Indiana v. Edwards, 554 U.S. 164 (2008) the Supreme Court held that the Constitution does not forbid States from insisting upon representation by counsel for those competent enough to stand trial but who suffer from severe mental illness to the point where they are not competent

7

to conduct trial proceedings by themselves. However, the Court declined to set a specific standard for determining competency to proceed pro se, instead leaving this determination to the trial judge's discretion. Indeed, "the trial judge, particularly one such as the trial judge in this case, who presided over . . . competency hearings . . . will often prove best able to make more fine-tuned mental capacity decisions, tailored to the individualized circumstances of a particular defendant." Id. at 177.

Multiple circuits have interpreted Edwards to confer discretion on district courts, rather than impose a new duty. See United States v. Turner, 644 F.3d 713, 724 (8th Cir. 2011) ("District court judges have discretion to force counsel upon the discrete set of defendants competent to stand trial but incompetent to represent themselves. It does not mandate two separate competency findings for every defendant who seeks to proceed pro se."); United States v. Berry, 565 F.3d 385, 391 (7th Cir. 2009) ("The Constitution may have allowed the trial judge to block his request to go it alone, but it certainly didn't require it.") (emphasis in original); United States v. DeShazar, 554 F.3d 1281, 1290 (10th Cir. 2009) (while the district court was not compelled to find the defendant competent to waive his right to counsel "simply because the court had found him competent to stand trial, it does not follow that the district court was absolutely prohibited from doing so.").

The Eleventh Circuit appears to have a broader interpretation, finding that Edwards can limit a defendant's right to self-representation in certain circumstances:

> In those cases in which a court finds a defendant to be suffering from a severe mental illness, Edwards appears to limit that defendant's right to self-representation and require counsel. Apart from those cases, however, we concur with our brethren on the Seventh Circuit and read Edwards to hold that the Constitution may allow the trial judge to block a defendant's request to go it alone, but it certainly doesn't require it.

United States v. Posadas-Aguilera, 336 Fed. Appx. 970, 976 n.5 (11th Cir. 2009) (emphasis added) (internal quotation and citation omitted). See also United States v. Garey, 540 F.3d 1253, 1267 n.9 (11th Cir. 2008). While the Sixth Circuit has not yet addressed this issue, it has acknowledged its interpretation that Edwards establishes a higher competency standard for self-representation versus standing trial. See, e.g., United States v. Ross, 703 F.3d 856, 869 (6th Cir. 2012) ("The threshold for finding that a defendant may be incompetent to stand trial is lower than the baseline for competency to represent oneself."); United States v. Back, 307 Fed. Appx. 876, 878 (6th Cir. 2008) ("Edwards indicates that a defendant who proceeds pro se may need to meet a higher standard of competency than merely that needed to stand trial.").

> "[T]he Constitution permits judges to take realistic account of the particular defendant's mental capacities by asking whether a defendant who seeks to conduct his own defense at trial is mentally competent to do so." Edwards, 554 U.S. at 177-78.

Questions that are appropriate to the inquiry of a defendant's right to proceed *pro se* during trial include:

1. whether defendant understands the charges against him and the serious penalties he faces if convicted.

2. whether defendant understands the difficulties of representing himself.

3. whether defendant understands basic legal principles/concepts and the court system.

4. whether defendant understands that availability and purpose of standby counsel.

In the instant matter, Gooch has had multiple competency evaluations, each of them concluding that Gooch does not suffer from a mental disease or defect such that makes him incompetent to stand trial. To the contrary, all mental experts that have evaluated defendant have opined that defendant's primary diagnosis is Malingering. On November 26, 2014, this

Court inquired of defendant regarding his desire to represent himself. At that time, the Court conducted the *pro se* inquiry in accordance with United States v. McDowell, 814 F.2d 245 (6th Cir. 1987). In an abundance of caution, the government requests that immediately prior to trial defendant again be questioned by this court regarding his desire to proceed. See Bench Book for U.S. District Court Judges, Federal Judicial Center, at § 1.02 (March 2013).

  C.  DEMONSTRATIVE EVIDENCE

As part of the investigation, the United States applied for and received court orders relating to the cellular telephone numbers identified during the investigation. These records are quite extensive and rather confusing when reviewed in their "raw" format. As such, in an effort to present this information in an efficient and organized manner, the United States anticipates presenting at trial charts that summarize the telephone calls between the accomplices in the time period of the crimes. This information will advance the government's case-in-chief in that the charts will assist in proving the confederates' planning of and communication during the robberies.

These summary charts are themselves admissible evidence under Federal Rule of Evidence 1006, and the government will seek to admit them as substantive evidence for the jury to reference during deliberations. Rule 1006 permits for such use of summary charts "to prove the content of voluminous writings [or] recordings . . . that cannot be conveniently examined in court." FED. R. EVID. 1006. The Sixth Circuit has also approved the use of summary materials. United States v. Bray, 139 F.3d 1104, 1112 (6th Cir. 1998); see also Sixth Circuit Pattern Criminal Jury Instruction No. 7.12 (2013 ed.).

The summary charts will accurately depict the evidence to be presented to the jury and will streamline the trial considerably by condensing numerous records into one or two summary charts. For each summary chart the government anticipates using at trial, the government has

complied with Rule 1006 by providing all records to Defendant and/or making the underlying documents available for examination and copying. Furthermore, the government will provide the charts to Defendant in advance of trial.

    D.    SEPARATION OF WITNESSES; PRESENCE OF GOVERNMENT AGENT AT TRIAL

The government respectfully requests that the Court issue a separation-of-witness order pursuant to Federal Rule of Evidence 615. The government designates FBI Special Agent Michael Kurkjian, the lead case agent, as its representative in this case to be present at counsel table throughout the trial. His presence in the courtroom during trial is essential to the presentation of the government's case. See FED. R. EVID. 615(b) (specifically excluding from a sequestration order "an officer or employee of a party that is not a natural person, after being designated as the party's representative by its attorney"); FED. R. EVID. 615(c) (providing an additional exception for essential witnesses).

Respectfully submitted,

STEVEN M. DETTELBACH
United States Attorney

By:   /s/ Michelle M. Baeppler
Michelle M. Baeppler (OH: 0065378)
M. Kendra Klump (CO: 43382)
Assistant United States Attorneys
801 W. Superior Ave., Suite 400
Cleveland, Ohio 44113
(216) 622-3689 / 3995
(216) 522-2403 (facsimile)
Kendra.Klump@usdoj.gov
Michelle.Baeppler@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on this 12th day of August 2015 a copy of the foregoing Government's Trial Brief was filed electronically and mailed to Defendant Eric Gooch at Northeast Ohio Corrections Center, 2240 Hubbard Rd., Youngstown, OH 44501. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's system.

/s/ Michelle M. Baeppler
Michelle M. Baeppler
Assistant U.S. Attorney